375 So.2d 1328 (1979)
STATE of Louisiana
v.
Adam SMITH.
No. 64057.
Supreme Court of Louisiana.
October 8, 1979.
Rehearing Denied November 1, 1979.
*1329 C. Michael Winters, Fine, Waltzer, Winters & Bagneris, New Orleans, for defendant-respondent.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, Asst. Dist. Atty., for plaintiff-relator.
SUMMERS, Chief Justice.
In separate grand jury indictments returned on March 20, 1970 Adam Smith was charged with the January 26, 1970 aggravated rape of two young girls in Jefferson Parish. La.Rev.Stat. 14:42. Because of his indigency counsel was appointed to represent defendant. When he withdrew for personal reasons, it was necessary to replace the original appointee, and a second attorney was appointed. Minutes of the trial court disclose that on October 8, 1970, while represented by counsel, defendant withdrew his former plea of not guilty and entered a plea of guilty without capital punishment. Having waived delays, defendant was sentenced to imprisonment for life on each charge, the sentences to run concurrently. Despite a thorough search by the sentencing judge, no transcript of the colloquy at the plea can be found. Because the court reporter died some time after the sentencing, apparently no transcript was ever prepared.
Thereafter, on January 4, 1973 defendant filed a petition for habeas corpus alleging ineffective counsel and that he was not informed of the rights he waived by entering the guilty pleas. In particular, he alleged he was not advised that a plea of guilty without capital punishment carried a mandatory life sentence.
At a hearing held on May 11, 1973, and continued to May 9, 1974, defendant was represented by the third lawyer appointed to represent him. The testimony discloses that defendant was sixteen years old at the time of the guilty plea. Donald Smith, defendant's accomplice in the crime, who was separately charged, also pleaded guilty without capital punishment to charges of aggravated rape. The pleas of defendant and Donald Smith were entered at the same time while defendant's aunt and Donald's father were present. Each was represented by separate counsel. Donald testified that their attorneys told them that a plea bargain involving attempted aggravated rape and a sentence of twenty years had been unsuccessful, but they could bargain for a guilty plea without capital punishment and for a life sentence. They were told unless they pled guilty without capital punishment they would be exposed to the death penalty. Donald also said the sentencing judge advised him of his right to trial by jury. He admitted he had confessed, but denied that his lawyer or his parents were present at the time. Otherwise, Donald testified that he was not advised of his rights, did not realize he would receive a life sentence and entered the guilty plea for fear of the death penalty.
Defendant Adam Smith also testified at this joint hearing where the separate applications of defendant and Donald for habeas corpus had been consolidated. He testified that his appointed counsel advised that the State had a very good case against him and that he was aware that he was to receive a life sentence, (a fact he later denied), but was compelled to accept that sentence for fear of the death penalty. He also said his plea was involuntary and that he was not advised of the consequences of the plea.
Witnesses for the State testified that defendant's aunt, who had raised him from infancy, and Donald's father were present at the sentencing and assured counsel that defendant "knew what was going on." A plea bargain was entered into and defendant entered his plea orally with the advice of counsel. Counsel representing defendant at the sentencing interviewed defendant and discussed the case with him on four occasions before the plea, including that court appearance.
*1330 On the first visit, on September 17, 1978, defendant was closely questioned by his attorney in Donald's presence and in the presence of Donald's attorney. Counsel learned that defendant had made an uncoerced statement to the police and had been identified at a lineup. These and other facts, in counsel's opinion, left open only the possibility of a technical defense.
At this interview both attorneys advised their client of the right to trial by jury, the right to appeal and the standard rights to which an accused was entitled. These included those waived by a guilty plea such as the right not to plea, the consequence of waiving the right to a jury, the forfeiture of the right to appeal and the right to urge technical motions. In the event of a guilty plea defendant was advised of his right to be informed of the consequences of his plea. This, however, defendant was advised, did not mean that he was not entitled to certain remedies available in the federal courts.
Both counsel decided, on the basis of the information obtained from this interview, to try to ascertain the facts relied upon by the State. The District Attorney allowed them to see certain portions of his file and as a result defense counsel concluded the State had a strong case. This information was revealed to defendants. Three times thereafter counsel spoke to the District Attorney about the case. He then wrote to defendant's aunt inquiring whether she had information which would assist in the defense. She could offer no help. Defendant's counsel also spoke to his predecessor who had been representing defendant.
Although defense counsel advised defendant that the jury would probably not render a capital verdict, he said this was not a certainty. When defendant was informed that a plea bargain had been struck, he was advised of the consequence of a life sentence. Counsel was satisfied that defendant understood the advice, for he did not indicate otherwise.
While no verbatim transcript exists of the proceedings, defense counsel recalled that at the plea the trial judge questioned defendant and he responded, indicating that defendant understood the proceedings. But defense counsel could not recall the words of the exchange. According to defense counsel defendant's aunt also stood during the proceedings and acknowledged that she approved and acquiesced in the plea which she had been assured defendant understood.
The sentencing judge recalled sentencing defendant. No specific, formal Boykin type advice was given, but he had pretried the case and was aware of the plea bargain and the fact that it was satisfactory to the defense. At the time there was a complete disclosure of the State's case which apparently persuaded defendant and his relative to accept a plea bargain.
On the basis of the hearing record the trial judge denied the writ on June 28, 1974. Defendant sought no review of this ruling.
In February 1978 defendant filed an application for habeas corpus in this Court praying that his plea of October 8, 1970 be set aside. He alleged that the trial judge failed to advise him of the constitutional rights he was waiving when he pled guilty, citing Boykin as authority for his position. He further alleged that he had previously, during December 1977, filed a like petition in the district court and no action had been taken. At no time did defendant refer to the May 1974 evidentiary hearing in the district court on a like petition.
After considering the February 1978 petition this Court transferred the petition to the district court for a ruling. When the trial judge denied the petition without an evidentiary hearing on September 22, 1978 this Court ordered an evidentiary hearing.
As a result a hearing was held on December 6, 1978 at which testimony was received from the defendant, defense counsel, and the trial judge, all having participated in the October 1970 sentencing. Defense counsel recalled to some extent the events surrounding his representation of defendant. Exposure in that time to the death penalty was his great concern. The fact that two or three months prior to the October 1970 plea a juvenile defendant had been convicted in a jury trial and sentenced to *1331 death intensified those concerns. Details of the events were recalled to some extent but they were mostly sketchy. Defense counsel did recall emphatically, however, that he advised defendant that if he entered a plea of guilty without capital punishment he would receive a life sentence. He was certain that defendant's plea was free and voluntary. Although he did not recall the specific words used, he remembered that the sentencing judge did address the defendant at the time of his plea as was his custom.
The sentencing judge could not recall the details of the guilty plea and had only a vague recollection of having sentenced defendant. At that time no stereotyped, formal Boykin examination or waiver of rights was in use at that court. It was his usual practice to ascertain whether the accused pleading guilty had the benefit of advice from his lawyers and that he was pleading voluntarilythe judge remembered that much.
Defendant also testified at the hearing. He could not remember being advised of the rights he waived by pleading guilty. In addition he denied that he understood what his sentence would be as a result of the plea. No objection was made, he said, by him or his attorney when the life sentence was imposed. He did recall, however, that his attorney talked to his aunt, and she told him it would be best to plead to avoid the electric chair.
Except for tangential reference to another hearing before another judge by defense counsel, no evidence of the May 1974 hearing was made part of this 1978 hearing.
Defense counsel argued at the hearing that the absence of a record of an inquiry by the sentencing judge into whether defendant was apprised of the rights he was waiving by a guilty plea is fatal to the validity of the plea.
In the opinion of the judge presiding at this December 1978 hearing it was unfortunate that there was no transcript of the proceedings at the guilty plea. Moreover, the dim memories of the witnesses in the December 1978 hearing, in his judgment, required that the writ be granted and the defendant be permitted to withdraw his guilty plea. Consequently he set aside defendant's conviction and sentence.
Soon after the trial court's ruling the State moved for a rehearing and permission to take further cross-examination. The motion was based upon the fact the identical issue has been presented in a 1974 application for habeas corpus, and an extensive evidentiary hearing had been held. As a result the 1974 application for habeas corpus had been denied by another judge, the court having found adequate evidence of the fact that defendant was advised of his rights at the guilty plea. Subsequently, in 1977, petitioner filed a second application which was denied by the sentencing judge based upon a careful review of the evidence of the 1974 hearing. Thus, the application for rehearing set forth, without the benefit of the evidence of the 1974 hearing, and on the basis of the December 6, 1978 hearing alone, the writ was granted.
Being of the opinion that he was not authorized to grant a rehearing, the judge presiding at the December 1978 hearing nevertheless felt constrained to express his view of the matter. He said that in all likelihood, based on the extensive transcript of the first evidentiary hearing held in 1974, he would reverse his ruling and deny the writ of habeas corpus. When the rehearing was denied, the State applied to this Court for review.
The issue involves the correctness of the court order which grants defendant's petition for habeas corpus and sets aside his guilty plea.
In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the United States Supreme Court held that, "It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." The decision imposed a requirement that there be a canvassing of the guilty plea with the accused to make sure he has "a full understanding of what the plea connotes and its *1332 consequences." The rule that this understanding be made a matter of record was to dispel any conclusion that ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might underlie or unduly influence the guilty plea. A free and voluntary guilty plea and knowledge of the consequences were basic standards of the Constitution pervading the rationale of Boykin.
Thereafter, in State ex rel. Jackson v. Henderson, 260 La. 88, 255 So.2d 84 (1971), this Court relying on Boykin, held that an express and knowing waiver of the accused's privilege against 1) compulsory self-incrimination, 2) his right to trial by jury, and 3) his right to confront his accusers was essential to the constitutional validity of a guilty plea.
Subsequently in State ex rel. LeBlanc v. Henderson, 261 La. 315, 259 So.2d 557 (1972), this Court decided that the requirements of State ex rel. Jackson v. Henderson would be applied prospectively only, that is, to guilty pleas entered after December 6, 1971, the date the Jackson decision became final. Thus, guilty pleas entered prior to December 6, 1971, such as the October 8, 1970 plea in the case at bar, were to be governed by the law in force prior to the December 6, 1971 decision in Jackson.
Insofar as applicable here, when a guilty plea is attacked in a post-conviction remedy, the judicial inquiry must always be what in fact occurred: Was the plea free and voluntary and was the defendant intelligently informed of its consequences? When a complete, verbatim transcript of the plea proceeding is unavailable, competent testimony may be used to reconstruct the crucial procedure. Such testimony becomes part of the plea record. LeBlanc v. Henderson, supra. See also McChesney v. Henderson, 482 F.2d 1101 (5th Cir. 1973), cert. denied, 414 U.S. 1146, 94 S.Ct. 901, 39 L.Ed.2d 102 (1974).
Reconstruction of the proceedings, involving defendant's guilty plea under the recited principles, provides the opportunity to decide from the totality of the circumstances whether the plea has been free and voluntary and made with an intelligent understanding of the consequence. No express requirement that a specific articulation of specific constitutional rights are sacramental.
Here these tests have been met. Aside from the fact that defendant and his cohort each had the benefit of competent counsel who pooled their efforts for the mutual defense of the two accused, defendant had previously been represented by still another lawyer shortly following his arrest. After advising defendant for some time and being unsuccessful in his efforts to win a plea bargain involving a sentence for attempted aggravated rape, that lawyer withdrew. His information was passed on to defendant's counsel who represented him at the sentencing.
Furthermore, defendant's aunt was consulted and informed of the facts and circumstances confronting the accused. She advised the accused to accept the plea bargain. The other defendant's father took part in this joint effort to dispel the real threat of a death penalty facing defendant.
At the time of the guilty plea, counsel informed defendant of his rights, the trial judge discussed the plea with defendant, and no objection was made to the sentence at the time it was imposed. There is moreover no intimation of force, coercion, threats or deception exerted to defendant's detriment. Without restating the facts already amply set forth we are satisfied that the contested guilty plea is valid.
For the reasons assigned, the ruling of the trial court granting defendant's writ is reversed and set aside. Defendant's plea of guilty and his sentence are affirmed, and defendant is remanded to the Department of Corrections to serve his sentence in accordance with law.
DIXON, J., dissents.