452 So.2d 367 (1984)
STATE of Louisiana
v.
Frank BETHLEY.
No. 83 KA 1415.
Court of Appeal of Louisiana, First Circuit.
June 26, 1984.
*368 Ossie Brown, Dist. Atty., Baton Rouge, for plaintiff-appellee.
Nathan Fisher, Baton Rouge, William J. Guste, Jr., Atty. Gen., State of La., New Orleans, for defendant-appellant.
Before SHORTESS, LANIER and CRAIN, JJ.
SHORTESS, Judge.
Frank Bethley was charged by bill of information with possession of pentazocine with intent to distribute, in violation of La.R.S. 40:967 A. The defense filed a motion to suppress evidence which was denied after a hearing. Defendant thereafter pled guilty as charged, reserving the right to appeal the trial court's denial of the motion to suppress. State v. Crosby, 338 So.2d 584 (La.1976). The court sentenced defendant to serve four years with the Department of Corrections without the benefit of probation, parole or suspension of sentence.
Defendant contends the trial judge erred in denying his motion to suppress physical evidence seized by two Baton Rouge police officers at the time of his arrest.
Evidence adduced at the suppression hearing and at the earlier preliminary examination (which was adopted into evidence at the suppression hearing) reveals that at about 8:45 p.m. on July 10, 1982, Detective Jurgen Himpler and Corporal Michael Dickinson of the Baton Rouge City Police Department were on routine patrol in civilian dress and in an unmarked police car. As they approached the intersection of 35th and Cain Streets heading east on Cain, the officers first observed defendant and another man. Defendant and the other man were standing side by side in the middle of the block on the north side of Cain Street facing Cain Street traffic.
According to Himpler, that area of Cain Street is renowned as being "a pretty heavy spot for drugs, guns and whatever else."
Because of defendant's stance and location, the officers' attention was focused on him as they slowly proceeded east. Both officers admitted that they had no prior personal knowledge of defendant or any involvement he might have had in drug trafficking.
However, as the unmarked police vehicle moved directly parallel to defendant, both officers observed a matchbox fall to the ground from defendant's right hand.
*369 Dickinson testified that he then exited the vehicle, walked over and picked up the matchbox and looked inside. Himpler confirmed that neither he nor Dickinson had exited their vehicle until after the matchbox had been dropped by defendant. After alighting from the vehicle, Himpler did identify himself as a policeman and ordered defendant not to move while Dickinson examined the contents of the matchbox.
After making a preliminary determination that the matchbox contained 20 sets of pills, half of which were talwin (pentazocine),[1] defendant was questioned and thereafter arrested.
The Fourth Amendment to the U.S. Constitution and La. Const. art. I, § 5 protect against unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La.C.Cr.P. art. 215.1, as well as by both state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Andrishok, 434 So.2d 389 (La.1983). The right to make an investigatory stop and question the particular individual detained must be based upon reasonable cause to believe that he has been, is, or is about to be engaged in criminal conduct. State v. Andrishok, 434 So.2d at 391.
When police officers make an investigatory stop without legal right to do so, property abandoned or otherwise disposed of as a result thereof cannot be legally seized. State v. Ryan, 358 So.2d 1274 (La.1978). If, however, the property is abandoned without any prior unlawful intrusion into a person's right to be free from government interference, then such property may be lawfully seized. State v. Belton, 441 So.2d 1195 (La.1983); State v. Ryan, 358 So.2d at 1276. In such cases, there is no expectation of privacy and thus no violation of a person's custodial rights. As our courts have previously held, "it is only when the citizen is actually stopped without reasonable cause or when that stop is imminent that the right to `be let alone' is violated." State v. Ryan, 358 So.2d at 1276.
The crucial inquiry is whether, at the time defendant disposed of the pentazocine, the police officers had effected an actual or imminent unlawful detention.
We do not regard the officers' conduct in the instant case as intrusive. When they neared the 3500 block of Cain Street, they did not intrude upon defendant's freedom of activity or movement. They did not even stop their automobile and alight until after defendant threw down the matchbox.
Defendant could not expect to carry contraband and drop it with impunity when he saw an approaching police officer. There is no expectation of privacy when property is abandoned and no constitutional prohibition against seizure of abandoned property by police. State v. Ryan, 358 So.2d at 1276. This assignment of error is without merit.
PATENT ERROR
We note, ex proprio motu, an error patent on the face of the record which requires that the sentence imposed be annulled and set aside.
By Acts 1981, No. 219 § 1, effective September 11, 1981, La.R.S. 40:964 was amended, thereby changing pentazocine from a schedule IV substance to a schedule II substance. Acts 1982, No. 602 § 1, effective September 10, 1982, added a special penalty provision for violation of La.R.S. 40:967 A when the controlled dangerous substance at issue is pentazocine. That provision now designated as La.R.S. 40:967 B(2), provides for a sentence of imprisonment at hard labor for not less than four years nor more than ten years, without benefit of parole, probation or suspension of sentence and an optional fine.
*370 However, during the period from September 11, 1981, through September 9, 1982, permissible penalties for possession of pentazocine with intent to distribute were governed by then La.R.S. 40:967 B(2) which provided as follows:
Any person who violates subsection A with respect to:
. . . . .
(2) Any other controlled dangerous substance [other than a narcotic drug] classified in Schedule II shall be sentenced to a term of imprisonment at hard labor for not more than ten years; and, in addition, may be sentenced to pay a fine of not more than fifteen thousand dollars.[2]
The instant offense occurred on July 10, 1982. It is well settled that defendant is to be tried and sentenced under the statute in effect at the time of the commission of the crime.[3] Defendant could have been sentenced to a term of imprisonment at hard labor for not more than ten years. It was illegal, however, for the trial court to sentence defendant to a four-year period of confinement without benefit of parole, probation or suspension of sentence. State v. Lindsey, 351 So.2d 1178 (La.1977).
The case must be remanded to the district court for resentencing in accordance with the penalty options in effect on July 10, 1982. La.C.Cr.P. arts. 882 and 916.
We affirm defendant's conviction but vacate the sentence and remand for resentencing in accordance with law.
CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED FOR RESENTENCING.
NOTES
[1] The State Police Crime Lab report later verified that the orange tablets were the controlled dangerous substance pentazocine.
[2] Pentazocine is defined as a depressant, not as a narcotic drug. See La.R.S. 40:961(23) and (11).
[3] Retrospective application of an enhanced sentence is prohibited by Louisiana and United States constitutional provisions prohibiting ex post facto laws. U.S.C.A. Const. Art. 1, § 9 cl. 3; La. Const. art. I, § 23. The prohibition extends to the enforcement of any enactment which changes the punishment to inflict greater penalty than that authorized for the crime at the time of its commission. State v. Robinson, 423 So.2d 1053 (La.1982).