SAVOIE, Judge.
Larry Hamilton was charged in a two-count bill of information with possession of pentazocine, a violation of La.R.S. 40:964 and 40:967, and possession of cocaine, both violations of La.R.S. 40:964 and 40:967. He waived his right to a trial by jury and, after a bench trial, was convicted as charged. The trial court imposed a sentence of five years at hard labor on each count, the sentences to be served concurrently with each other and with any other sentence defendant might be serving. Defendant appealed, urging three assignments of error, as follows:
1. The court erred by denying his motion to suppress physical evidence.
2. The evidence was not sufficient.
3. The sentence is excessive.
Assignment of error number three was specifically abandoned as being without merit.
FACTS
After defendant waived his right to a jury trial, the state and defendant entered into a joint stipulation as to the evidence upon which the court was to reach a verdict. Both parties stipulated that the testimony of the police officers from the preliminary examination and the hearing on the motion to suppress physical evidence, as well as the scientific analysis report, would be submitted to the court as evidence in lieu of testimony.
At the preliminary examination, Det. Tul-lie Vincent testified that, on November 2, 1987, at around 10:00 or 11:00 in the morn *555 ing, while on patrol in an unmarked police vehicle in the area of 39th and Cain Streets in Baton Rouge, Louisiana, he observed defendant standing near the street with another man. Det. Vincent noted that defendant and the other man were facing each other with their attention drawn to their hands. As Det. Vincent, accompanied by Det. Stanley Bihm and Sgt. Michael Dickinson, proceeded down 39th Street, he observed the reaction of the two men when they noted the presence of the police. Defendant and the other man, John Browder, immediately ended their conversation, and Browder walked to the porch of a nearby house. Det. Vincent saw him push a small plastic bag off the porch. Det. Vincent later retrieved that bag.
During the hearing on the motion to suppress physical evidence, Sgt. Dickinson testified that he had made numerous arrests for narcotics violations in the house in front of which the men were standing. He further testified that, every time he passed the area, he looked at the house; that the area was a very high drug trafficking area; and that the actions of the men were consistent with what he knew to be a narcotics transaction. Sgt. Dickinson specifically testified that he and the other officers were still in the patrol unit at the time he saw defendant and Browder standing with their hands together as though they were making some kind of exchange. Sgt. Dickinson also observed the reaction of the men when Browder saw the police vehicle. He related that it appeared to him that Browder warned defendant that the police were present. Sgt. Dickinson further testified that defendant then backed up to the porch and threw a black object to the side of the house with his right hand. After observing this activity, Sgt. Dickinson (who was driving) stopped the car; the officers confronted the two men. Sgt. Dickinson related that he told Det. Vincent that defendant had thrown an object in the vicinity of the gas meter and asked Det. Vincent to retrieve it. Det. Vincent found a small metal box containing five sets of a substance he believed to be “T’s and Blues” and two small plastic bags containing a substance he suspected was cocaine.
Det. Vincent also testified at the hearing on the motion to suppress. His testimony corroborated that of Sgt. Dickinson, except as to the time the Sgt. stopped the car in relation to defendant’s actions. Det. Vincent testified that when he and Sgt. Dickinson observed defendant and Browder moving around in reaction to their presence, Sgt. Dickinson then stopped the car. According to Det. Vincent, as the police exited their vehicle and approached the men, Browder threw a bag off the porch. Det. Vincent testified that he did not see defendant throw anything, but that he was mainly watching Browder while Sgt. Dickinson watched defendant.
Det. Bihm testified that he did not observe the actions of defendant and Brow-der because he was not watching them, and that he only participated in the search of defendant, pursuant to which he found $80.00 in cash. Det. Bihm was not aware of the timing of the stop of the car in relation to the defendant’s actions. According to Det. Bihm, when they observed defendant and John Browder, either Sgt. Dickinson or Det. Vincent said “[TJhat’s Larry Hamilton”. We note that Det. Vincent testified that he did not hear anyone in the car identify defendant by name, and that Sgt. Dickinson testified that he did not recognize defendant until after the car was stopped and he walked up to him.
John Browder testified for the defense. He stated that, on the morning in question, he was conversing with defendant when they saw the police car. He denied that he and defendant reacted to the presence of the officers in the manner described by Sgt. Dickinson and Det. Vincent. He claimed that he was seated on the porch at the time, and his only action was to knock ashes from the cigarette that he was smoking. He further claimed that he was in a position to observe defendant’s actions during the entire approach of the police vehicle, and defendant did not throw anything. Browder testified that he did not see the officers recover the black metal box. He related that, if such a box was recovered, neither he nor defendant were connected to it. Browder claimed that he *556 had $80.00 in cash in his pocket to pay a furniture bill, and one of the officers removed it during the confrontation.
The small plastic bag retrieved by Det. Vincent was empty. Laboratory analysis confirmed that the small metal box contained five tablets of pentazocine and two small bags of cocaine.
DENIAL OF MOTION TO SUPPRESS
Defendant contends that the police actions constituted an illegal investigatory stop. He submits that the officers had no articulable knowledge of facts and circumstances to justify the infringement of defendant’s right to be free from governmental intrusion and, therefore, the stop was invalid because they lacked reasonable cause. The state claims the arrest did not result from an investigatory stop; rather, it claims the stop resulted from suspicions aroused by an inspection of the contents of the property abandoned by defendant before the officers approached.
The Fourth Amendment to the U.S. Constitution and La. Const. Art. I, Sec. 5, protect against unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La.C.Cr.P. art. 215.1, as well as by both state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Andrishok, 434 So.2d 389, 391 (La.1983). The right to make an investigatory stop and question the particular individual detained must be based upon reasonable cause to believe that he has been, is, or is about to be engaged in criminal conduct. State v. Andrishok, 434 So.2d at 391.
When police officers make an investigatory stop without legal right to do so, property abandoned or otherwise disposed of as a result thereof cannot be legally seized. State v. Ryan, 358 So.2d 1274, 1275 (La.1978). If, however, the property is abandoned without any prior unlawful intrusion into a person’s right to be free from government interference, then such property may be lawfully seized. State v. Belton, 441 So.2d 1195, 1199 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Ryan, 358 So.2d at 1276. In such cases, there is no expectation of privacy and thus no violation of a person’s custodial rights. State v. Bethley, 452 So.2d 367, 369 (La.App. 1st Cir.1984). As our courts have previously held, “it is only when the citizen is actually stopped without reasonable cause or when that stop is imminent that the right to ‘be let alone’ is violated.” State v. Ryan, 358 So.2d at 1276. (Citation omitted).
The crucial inquiry, therefore, is whether or not, at the time defendant disposed of the contraband, the police officers had effected an actual or imminent unlawful detention. We find that they had not done so.
We do not regard the officers’ conduct in the instant case as intrusive. When the patrol unit neared the intersection where defendant and Browder were conversing, they did not intrude upon defendant’s freedom of activity or movement. The trial judge expressly found that the defendant threw down the metal box prior to the time Sgt. Dickinson stopped the car; thus, based on his factual finding, the officers did not even stop their automobile and alight until after defendant threw down the metallic box. See State v. Bethley, 452 So.2d at 369. However, even accepting the testimony of Det. Vincent that defendant threw down the box after the officers stopped their car and began approaching defendant on foot, there was no violation of defendant’s rights. See State v. Morrison, 459 So.2d 1320, 1323 (La.App. 1st Cir.1984); State v. Ryan, 358 So.2d at 1276. Moreover, Sgt. Dickinson specifically testified that the police unit did not cut off the men’s exit; rather, they could have walked away from the officers toward the rear of the house, but chose not to do so.
Defendant could not expect to carry contraband and drop it with impunity when he saw an approaching police officer. There is no expectation of privacy when property is abandoned and no constitutional prohibition against seizure of abandoned property by police. State v. Ryan, 358 So.2d at *557 1276. This assignment of error has no merit.
SUFFICIENCY OF THE EVIDENCE
By assignment of error number two, defendant submits that the evidence is not sufficient to sustain the verdict. He claims that the state failed to prove that defendant had dominion or control over the abandoned property, or the knowledge that the abandoned property contained contraband.
The proper method for raising the sufficiency of the evidence is by motion for post-verdict judgment of acquittal. La.C. Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). Defendant failed to file such a motion. Nevertheless, upon assignment of error, a reviewing court must consider the evidence to determine whether or not it meets constitutional standards. State v. Holts, 525 So.2d 1241, 1244 (La.App. 1st Cir.1988). The proper standard for appellate review of the sufficiency of the evidence is whether or not, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This standard has now been codified in La.C.Cr.P. art. 821. State v. Korman, 439 So.2d at 1100, 1101. The reviewing court must defer to the actual trier of fact’s rational credibility calls, evidence weighing, and inference drawing. See State v. Mussall, 523 So.2d 1305, 1311 (La.1988).
Herein, Sgt. Dickinson testified that, while patrolling an area notorious for drug trafficking (and, in particular, in front of a house in which he had made narcotics arrests), he saw defendant and Browder engaging in activity which, in his experience, resembled a narcotics transaction. He saw defendant throw a small black object into the yard as the police unit approached. Det. Vincent searched the area and found only one object, a small black metal box. Pentazocine and two small bags of cocaine were found inside.
We find, therefore, that the trial court could have found that the small, black metal box found by Det. Vincent in the area in which defendant threw a small, black object was the same object over which defendant exercised dominion or control until he saw the approaching police unit.
Guilty knowledge is an essential element of the crime of possession of contraband. State v. Edwards, 354 So.2d 1322, 1327 (La.1978). Although guilty knowledge is a question of fact, it need not be proven as fact, but may be inferred from the circumstances. See State v. Guirlando, 491 So.2d 38, 40 (La.App. 1st Cir.1986). A rational trier of fact could have found that, through his nervous actions and by attempting to rid himself of the object as the police approached, defendant showed guilty knowledge of the contents of the box. We find, therefore, that any rational trier of fact could have found that the state proved the element of possession and that defendant had knowledge of the contents of the box. This assignment of error has no merit.
For the above and foregoing reasons, defendant’s convictions are affirmed.
AFFIRMED.