KNOLL, Judge.
The limited legal question in this writ application is whether the trial court erred in finding that the agreements undertaken by the State were not sufficient inducements to render defendant’s guilty plea invalid.
On November 27, 1988, relator entered a cafe to confront Ethel Shelby, with whom he had a daughter. He fired shots at Shelby and her companion, Ray Charles Farris, killing Farris and seriously wounding Shelby. On January 30, 1989, the Grand Jury of Sabine Parish indicted defendant, John R. Newton, with one count of first-degree murder of Ray Charles Farris.
Relator originally pled not guilty to the charge of first-degree murder. At several temporal points prior to trial, the District Attorney’s Office informed relator of the office’s willingness to accept a guilty plea to second-degree murder. On August 17, 1989, during a break in jury selection, relator expressed a desire to speak to his ailing mother. After speaking to his mother, relator requested a meeting with Robert Burgess, the assistant district attorney prosecuting the case, and with Elizabeth Pickett, an assistant district attorney not assigned to relator’s case. Burgess and Pickett met with relator and his counsel, Steven Thomas and Joseph Toups, Jr., both public defenders.
Relator indicated that he wanted to plead guilty and accept the consequences. The group discussed his options, and relator agreed to plead guilty to second-degree-murder. He tendered the guilty plea on. August 17, 1989. On August 23, 1989, the trial court sentenced relator to the mandatory sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
• Relator applied for post conviction relief, claiming that the State breached the plea agreement. This court, pursuant to a writ of review, ordered the district court to act on relator’s application for post conviction relief. The trial court denied relator’s claims that the State breached the plea agreement. On writ of review, this court found the record insufficient to determine whether relator relied upon a promise by the State when pleading to second-degree murder and found the record void of evidence as to whether the State abided by the plea agreement. Thus, we remanded the case to the trial court for an evidentiary hearing to determine whether the State had authority to enter into the plea agreement, what promises were made, and whether the agreements by the State to obtain special placement for relator and to not oppose commutation of the sentence were sufficient inducements to render the plea invalid.
The trial court denied relator’s request to withdraw his guilty plea. The trial court found that the agreements by the State to obtain special placement for relator and not to oppose commutation were not sufficient inducements to render the plea invalid because they were merely lagniappe, and defendant’s plea was freely and voluntarily given without threat, coercion, or other promises. Relator seeks a writ of review from the ruling of the trial court.
The record confirms that relator had chosen to enter a guilty plea to second-degree murder, in exchange for the State’s promise to drop the charge of first-degree murder. Toups, Burgess, and Thomas all elaborated that, during the guilty plea hearing, the District Attorney’s Office agreed to use the full extent of its power to influence the choice of the correction facility at which relator was to be housed. Several alternative housing facilities were discussed, but the essence of the agreement was to avoid having relator sent to Angola. Further *874 more, the District Attorney’s Office agreed to bind itself now and in the future to never oppose any application for commutation of sentence.
Specifically, the record shows that the following statements were made during the guilty plea colloquy:
By Toups: “In return for this plea the State is agreeing to dismiss ... [the] charge of Attempted First Degree Murder. The State is further agreeing that the District Attorney’s Office will use the full extent of its influence to see if at all possible that Mr. Newton is housed at the correction facility at Beauregard so as to be allowed access to his mother, who is not only elderly, but also ill.”
By Burgess: “Your Honor, if that is not acceptable, we will attempt to use whatever we can to place him at a facility other than at Angola, at other facilities that might be equally as close or as advantageous for those circumstances .... ”
By Thomas: “It is also possible, Your Honor, that he might be allowed to remain here in Sabine Parish as a trustee. We intend to address the Sheriff about that.”
By Toups: “The second part of the State’s agreement in this matter is that the District Attorney's Office, not just the incumbent, agrees that at such time as Mr. John R. Newton can make application for commutation of sentence that will not be opposed by the District Attorney’s Office.”
By Burgess: “That is correct, Your Hon- or.... I will state for the office of the District Attorney that we would bind our office to that so that if at some point in the future that an opposition came up that it was something that would possible [sic] formulate a basis for withdrawal of that plea at a later date if some future district attorney ... it’s enforceable under contract theory, Your Honor.”
Burgess again confirmed the statement as accurate, after which Toups said, “now, I believe that states the full bargain.”
Relator has been placed by the Department of Corrections in Angola. The District Attorney’s Office has never contacted the DOC on relator’s behalf.
A guilty plea will not be considered constitutionally valid unless it is made voluntarily by the defendant and with an understanding of the nature of the charge. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The Louisiana Supreme Court in State v. Smith, 375 So.2d 1328 (La.1979), stated the implications of Boykin as requiring that there be a canvassing of the guilty plea with the accused to make sure he has a full understanding of what the plea connotes and its consequences. This must be made a matter of record to dispel any conclusion that ignorance, incomprehension, coercion, terror, inducements, or threats might underlie or unduly influence the guilty plea.
The Louisiana Supreme Court permits a constitutionally infirm guilty plea to be withdrawn after sentencing by way of appeal or post conviction relief. State v. Dixon, 449 So.2d 463, 464 (La.1984). In Dixon, the court stated:
“a guilty plea is constitutionally infirm when a defendant is induced to enter that plea by a plea bargain or by what he justifiably believes was a plea bargain, and that bargain is not kept. In such a case a defendant has been denied due process of law because the plea was not given freely and knowingly.”
The court in Dixon remanded the case for an evidentiary hearing and stated that if the evidence adduced at the hearing supported the finding that the defendant’s guilty plea was induced in part by the State’s promise, then the court should enforce the plea bargain or allow defendant to withdraw his guilty plea. Even if no agreement existed, but defendant justifiably believed one did, then the guilty plea was not knowingly made and must be set aside.
In the present case, the trial court made no determination whether relator could have reasonably believed that the housing and commutation agreements were part of the plea bargain agreement, such that relator relied on the promise to any significant *875 degree, as opposed to considering it lagniappe. In fact, the record in the present case contains sufficient evidence to support a determination that relator did justifiably rely on the promises.
The plea bargain agreement by its nature is not finalized until after a properly Boykinized defendant formally pleads guilty on the record before the court, and the court accepts the plea. See, State v. Collins, 359 So.2d 174 (La.1978). The housing and commutation agreements were made during the hearing on the guilty plea, prior to the court accepting relator’s formal plea, and were made part of the record. After the agreements were read into the record and characterized as the State’s agreement, Toups stated “Now I believe that states the full bargain,” and asked relator, “John is that what we agreed to?” to which relator responded affirmatively. Burgess, the assistant district attorney, then stated that a breach of the commutation agreement “would possibly formulate the basis of withdrawal of that plea at a later date.... ”
We find that the record contains sufficient evidence to support a justifiable belief that relator relied, in part, on the State’s agreement to try to obtain special placement for relator and to not oppose commutation of sentence which are not proper elements for consideration in a plea bargain. These elements of the plea bargain exceeded the jurisdiction of the district attorney and should not have been made part of the plea bargain. Accordingly, we must vacate relator’s plea and sentence and remand this case to the district court for further proceedings consistent with the views expressed herein.
DECREE
The guilty plea and sentence of relator, John R. Newton, are hereby vacated and set aside, and this case is remanded to the district court for further proceedings consistent with the views expressed herein.
WRIT GRANTED.