635 So.2d 554 (1994)
STATE of Louisiana, Plaintiff-Appellee,
v.
Rodney LAPOINT, Defendant-Appellant.
No. CR 93-1141.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1994.
*555 Paul Peter Reggie, for State of LA.
Ronald F. Ware, for Rodney Lapoint.
Before DOUCET, THIBODEAUX and BERTRAND[*], JJ.
DOUCET, Judge.
The defendant, Rodney Lapoint, was charged by bill of indictment with second degree murder. The charge was later amended to manslaughter, a violation of La. R.S. 14:31. The murder was alleged to have occurred on December 1, 1990. The defendant entered a plea of guilty to the charge of manslaughter on March 15, 1993, just prior to the commencement of his trial.
On June 28, 1993, the defendant moved to withdraw his guilty plea just prior to sentencing. A hearing on the matter was held. The trial court denied the motion and proceeded with sentencing. The defendant was sentenced to fifteen years at hard labor.
The defendant appeals his conviction and sentence.

DENIAL OF MOTION TO WITHDRAW GUILTY PLEA
The defendant alleges that the trial judge erred in denying his motion to withdraw his guilty plea. The defendant argues that there was an insufficient factual basis for the guilty plea and therefore, his guilty plea does not reflect that he knowingly and intelligently considered his options in deciding to plead guilty. The defendant urges that due process required the court to make an inquiry into the factual basis of the plea and make "a judicial finding of significant factual basis for the defendant's pleas," citing State v. Linear, 600 So.2d 113 (La.App. 2 Cir.1992).
A guilty plea will not be considered constitutionally valid unless it is made voluntarily by the defendant and with an understanding of the nature of the charge. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). An accused must be advised of the elements of the crime. Henderson v. Morgan, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). The Louisiana Supreme Court in State v. Smith, 375 So.2d 1328, 1331-1332 (La.1979), stated the implications of Boykin v. Alabama, supra, as follows:
The decision imposed a requirement that there be a canvassing of the guilty plea with the accused to make sure he has "a full understanding of what the plea connotes and its consequences." The rule that this understanding be made a matter of record was to dispel any conclusion that ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might underlie or unduly influence the guilty plea. A free and voluntary guilty plea and knowledge of the consequences were basic standards of the Constitution pervading the rationale of Boykin.

However, the validity of a guilty plea does not depend upon whether or not the trial court specifically informed relator of every element of the offense. Rather, relator must establish his lack of knowledge of the essential nature of the offense to which he pled. State v. Bowick, 403 So.2d 673 (La.1981).
[W]hile most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a *556 constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.
North Carolina v. Alford, 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970). See also State v. Rivers, 444 So.2d 1384 (La.App. 3 Cir.1984). The court in North Carolina v. Alford, supra, found that the defendant's plea of guilty while maintaining his innocence, when viewed in light of the evidence against him, substantially negated his claim of innocence. Further, the evidence against him provided a means by which the judge could test whether the plea was being intelligently entered. The court stated:
Because of the importance of protecting the innocent and of insuring that guilty pleas are a product of free and intelligent choice, various state and federal court decisions properly caution that pleas coupled with claims of innocence should not be accepted unless there is a factual basis for the plea, ... and until the judge taking the plea has inquired into and sought to resolve the conflict between the waiver of trial and the claim of innocence....
* * * * * *
In the federal courts, Fed.Rule Crim. Proc. 11 expressly provides that a court "shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."
Alford, at 400 U.S. at 38 n. 10, 91 S.Ct. at 167-168 n. 10, 27 L.Ed.2d 162 (citations omitted). Likewise, the Federal Fifth Circuit has held that the due process clause imposes no constitutional duty on state trial judges to ascertain a factual basis prior to accepting a guilty plea unless the state judge is put on notice that there is some need for such inquiry. State v. McGougan, 717 F.2d 186 (5 Cir.1983), citing Willett v. Georgia, 608 F.2d 538 (5 Cir.1979). Basing its finding on Alford and Oaks v. Wainwright, 445 F.2d 1062 (5 Cir.1971), cert. denied, 405 U.S. 995, 92 S.Ct. 1271, 31 L.Ed.2d 464 (1972), the court in Willett v. Georgia, 608 F.2d at 540, held that when a defendant pleads guilty while claiming his or her innocence, the court commits constitutional error in accepting the plea unless the plea is shown to have a factual basis.
We find no requirement for a significant factual basis as stated by the second circuit in State v. Linear, 600 So.2d 113 (La.App. 2d Cir.1992), and State v. Powell, 584 So.2d 1252 (La.App. 2 Cir.1991). The second circuit in these cases and their progeny, cite Alford, Banks v. McGougan, and Willett as their source for this proposition. The "Alford plea" requires a factual basis for the plea, but not necessarily a "substantial" one.
The next question to be answered is whether the guilty plea colloquy alone may be used to establish the factual basis. La. C.Cr.P. art. 559(A) provides that "[t]he court may permit a plea of guilty to be withdrawn at any time before sentence." On review, the trial judge is granted great discretion as to whether to allow or disallow the withdrawal of a guilty plea pursuant to La.C.Cr.P. art. 559, if the circumstances surrounding the plea of guilty meet the constitutional guidelines. State v. Lasseigne, 461 So.2d 1196 (La.App. 3 Cir.1984). In State v. Lewis, 421 So.2d 224 (La.1982), the defendant alleged that he was unintentionally misled by remarks made by the trial judge. The court in that case noted that when a defendant motions the court to withdraw his guilty plea, a trial judge may either conduct a hearing to determine whether the plea should be vacated or vacate the sentence without a hearing.
In State v. Galliano, 396 So.2d 1288, 1290 (La.1981), the court explained:
Since the plea colloquy is but an objective method of ascertaining and preserving an accused's state of mind, however, judicial inquiry need not focus solely upon the clarity of the words used. For this reason, a court, when called upon to do so through a recognized procedural vehicle, has the power, notwithstanding a record waiver of constitutional rights, to determine whether other factors present at the time of a guilty plea, whether inside or outside the plea colloquy record, were sufficient to render the plea involuntary or unintelligent. *557 See Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).
In State ex rel. LaFleur v. Donnelly, 416 So.2d 82, 84 (La.1982), the court noted that although it is important to explain to the accused the elements of the offenses with which he is charged and the rights he is waiving by pleading guilty thereto, "it is probably much more important to the defendant's decision (about whether to plead guilty) that he understand the maximum penalty exposure."
At the guilty plea hearing in the present case, the defendant waived the formal reading of the amended bill of indictment charging him with manslaughter. The court ascertained that the defendant could read and write the English language and that he had gone over the form with his attorney. The judge then explained to the defendant that the charge of manslaughter is a felony for which he could receive up to 21 years at hard labor. The court then ascertained that the defendant understood that by pleading guilty, he would stand convicted of the crime of manslaughter and that he was waiving the six constitutional rights on the form. The defendant acknowledged that his attorney had gone over those rights with him, that he understood them, and had no questions. The defendant's attorney explained that the guilty plea was being entered pursuant to North Carolina v. Alford, supra, and thus, the defendant was not admitting the factual basis for the guilty plea.
The following factual basis for the guilty plea was placed in the record by the assistant district attorney as follows:
MRS. MINALDI: Your Honor, if the State were to proceed to trial on this matter, the State would prove beyond a reasonable doubt that on December 1st of 1990, Mr. LaPoint killed Willis Lanning.
The defendant made no objection to the factual basis entered into the record.
The defendant then informed the judge that he had not been induced to sign the form by any threat, pressure, or force, and that his actions were entirely free and voluntary. There was no sentencing recommendation made.
On June 28, 1993, just prior to sentencing, the defendant made an oral motion to withdraw his guilty plea. He based his motion on the fact that James Knauf, who had given a statement to the police implicating the defendant, now claimed he lied in the statement. Additionally, the defendant urged that Winston Fruge's statements incriminating the defendant were untrue. The hearing on the motion immediately followed.
At the hearing, it was established that the defendant was aware of the existence of the statements given by Knauf and Fruge as well as the offense and autopsy reports. The defendant also admitted being in the Pass Time Lounge, where the victim was killed, on the night of the murder. The defendant testified that he had an altercation with a friend of the victim that night and later broke up a fight between the victim and Knauf.
In inquiring why Fruge was not available to testify at the hearing, the trial judge stated that the defendant must have been aware of Fruge's statement and that he assumed that the statements were why the defendant had pled guilty in the case. To this, the defense counsel responded, "Well, Your Honor, that's not exactly the reason why we pled guilty." Later, defense counsel went on to explain that:
Mr. LaPoint pled guilty under the Alford decision. He's maintained his innocence from the date of his arrest, arraignment, pretrial, and even up until the time of the plea and during the plea, and then again, up until today's date. He pled guilty because of his fear of being convicted of second degree murder, which carries a mandatory life sentence. Mr. LaPoint is married and has children and felt that the risk was too great, or that he didn't want to take the risk of going to trial and being found guilty of second degree murder, and that is the reason for the plea, and again it was under the Alford decision, where he did not admit to the factual basis.
Knauf did indeed testify that his original statement to the Sulphur Police was a lie and that he had no knowledge of the event. Knauf testified that he gave the statement so that the Sulphur Police "would turn [him] *558 loose on the bench warrants" he had outstanding. Fruge did not testify. Therefore, his statement of defendant's guilt stands.
On cross examination the defendant admitted that he was aware that if he pled guilty there was the possibility that he might get probation if he pled guilty to manslaughter, though his attorney had told him that this was not likely. The defendant admitted that his counsel had explained that if he were convicted of second degree murder he would be sentenced to life in prison without benefit of parole, probation or suspension of sentence. He also testified that he had been informed that the maximum statutory sentence was 21 years at hard labor for manslaughter. The following exchange then took place:
Q Okay. Knowing that, you entered into a bargain, where youthe State reduced the charge to a lessor charge and you pled guilty to that charge; is that correct?
A Yes. For my family, yes.
Q Did anybody twist your arm behind your back?
A No, they did not.
Q You did it freely and voluntarily, knowing what the consequences were?
A Yes, the option looked like it was much better for my family.
Peggy Lapoint, the defendant's wife, also testified at the hearing. She stated that she and the defendant weighed all the possibilities and that the defendant chose to plead guilty. When asked if it would be fair to say that she and her husband freely and voluntarily made the decision, she replied, "Yes."
In consideration of all the evidence in the record, including that adduced at the hearing, there was enough evidence for the trial judge to find that the defendant's guilty plea had been given knowingly and voluntarily. Therefore, the judge did not abuse his discretion in denying the defendant's motion to withdraw his plea.

EXCESSIVE SENTENCE
The defendant alleges that the sentence imposed was cruel, unusual and excessive and that the trial judge failed to adequately articulate the reasons for the sentence and the factual basis therefor.
In State v. Sepulvado, 367 So.2d 762 (La. 1979), the Supreme Court determined that Art. 1, § 20 of the Louisiana Constitution of 1974 authorized appellate review of individual sentences for excessiveness. The court in Sepulvado, supra, found that the statutory criteria set forth in old La.C.Cr.P. art. 894.1 (1977) provided the appropriate criteria to measure whether a sentence within statutory limits is nevertheless excessive, either by reason of its length or because it specifies confinement rather than less onerous sentencing alternatives.
The jurisprudence clearly indicates that to constitute an excessive sentence this court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981); State v. Everett, 530 So.2d 615 (La.App. 3 Cir.1988), writ denied, 536 So.2d 1233 (La.1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 414 So.2d 1210, 1217 (La.1982).
In a recent Louisiana Supreme Court decision, State v. Smith, 93-K-0402, at p. 1 1993 WL 527405 (La. December 10, 1993), the court held "... the trial court must consider the guidelines and, if gross deviation is called for, must state for the record the reasons for departure which shall specify the mitigating or aggravating circumstances and the factual basis therefor." In order to use the sentencing guidelines as an aid, the appropriate grid cell must be determined to arrive at the designated sentencing range. The grid cell is determined by the seriousness level of the offense and the criminal history index of the offender.
The offense of manslaughter has a seriousness level of "1." The defendant's criminal history includes convictions for criminal trespass, driving while intoxicated and theft, all misdemeanors. To calculate the defendant's *559 criminal history index a quarter point is added for each misdemeanor, not to exceed one point. Therefore, the defendant's criminal history points totaled three-quarters of a point, which translates to a criminal history index classification of "F." The appropriate sentencing grid cell is "1-F" which recommends incarceration and suggests a minimum term of 72 months (6 years) and a maximum term of 102 months (8½ years).
It is well settled that a criminal defendant is to be sentenced under the statute in effect at the time of the commission of the crime. State v. Robinson, 423 So.2d 1053 (La.1982); State v. Bethley, 452 So.2d 367 (La.App. 1 Cir.1984). Therefore, the statutory sentencing provision in the applicable version of La.R.S. 14:31 provides that whoever commits manslaughter shall be imprisoned at hard labor for not more than 21 years.
The trial judge sentenced the defendant to 15 years at hard labor. This sentence falls outside the designated sentencing range and is greater than the maximum sentence in the range.
The designated sentence range provided in the grid is appropriate for a typical case, one committed without aggravating or mitigating circumstances. La.S.G. § 209(A)(1). The guidelines mandate that when departing, the court shall state reasons for the record and pronounce a sentence which is proportional to the seriousness of the offense and the offender's criminal history. La.S.G. § 209(A)(1). See also La. C.Cr.P. art. 894.1(C). In sentencing the defendant the trial judge stated aggravating factors.
At sentencing the judge specifically noted that he took into consideration the presentence investigative (PSI) report, which includes a sentencing guidelines report. He then noted that he considered letters received from the victim's family, which describe their loss and the lack of remorse shown by the defendant. The judge stated he felt that the defendant was the responsible party. The judge also listed the aggravating circumstances set forth in the PSI report as reasons for imposing the 15 year sentence.
The judge stated for the record that he was not giving the maximum sentence under the statute because the defendant was a first felony offender. The judge also took into consideration the defendant's age and marital status.
We have reviewed the reasons given by the trial court for deviating from the sentence guidelines. While four of the aggravating circumstances mentioned in the PSI report cannot properly be used to enhance the defendant's sentence, the remaining factors are proper reasons for deviating from the sentencing guidelines. We find the aggravating factors listed by the trial court sufficiently support his upward departure and that the sentence imposed is not excessive.

CONCLUSION
We find the totality of the evidence in the record supports the trial court's finding that the defendant's guilty plea to manslaughter was knowingly and voluntarily made. Therefore, the judge did not abuse his discretion in denying the defendant's motion to withdraw his guilty plea.
Further, we find sufficient reasons for deviating from the sentencing guidelines exist and the sentence of 15 years at hard labor is not cruel, unusual or excessive.
Accordingly, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[*] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.